J-S73026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SCOTT ALLEN WHITE, | |
| Appellant | No. 685 WDA 2018 |

Appeal from the Judgment of Sentence Entered November 30, 2017
In the Court of Common Pleas of Crawford County
Criminal Division at No(s): CP-20-CR-0000647-2016

BEFORE:  GANTMAN,  P.J., BENDER, P.J.E., and OLSON, J.

MEMORANDUM BY BENDER, P.J.E.:              **FILED JANUARY 30, 2019**

Appellant, Scott Allen White, appeals from the judgment of sentence of an aggregate term of 262-596 months' imprisonment, imposed after a jury convicted him of six counts of involuntary deviate sexual intercourse (IDSI), 18 Pa.C.S. § 3123(a)(7); five counts of unlawful contact with a minor, 18 Pa.C.S. § 6318(a)(1); five counts of statutory sexual assault, 18 Pa.C.S. § 3122.1(b); five counts of aggravated indecent assault (AIA), 18 Pa.C.S. § 3125(a)(8); one count of sexual assault, 18 Pa.C.S. § 3124.1; one count of corruption of a minor, 18 Pa.C.S. § 6301(a)(1)(i); and fourteen counts of indecent assault, 18 Pa.C.S. § 3126(a)(8).[1]  We affirm.

_____

[1] In Appellant's notice of appeal, he purported to appeal from the trial court's April 10, 2018 order denying his post-sentence motion.  However, this Court has determined that "the order denying post-sentence motions acts to finalize

The jury found Appellant committed the above-stated offenses against his then-girlfriend's fourteen-year-old sister (referred to herein as "the victim") over a period of time spanning from approximately April 2008 through February 2009. During that period, the victim had been living with her sister and Appellant, who was about thirty-five years old at the time.[2]

After the trial court sentenced Appellant, he filed a timely post-sentence motion, which the trial court denied on April 10, 2018. Subsequently, Appellant filed a timely notice of appeal, and timely complied with the trial court's instruction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant presently raises the following issues for our review:

1[.] Was Appellant deprived of his constitutional right to counsel when the trial court failed to appoint alternate counsel?

2[.] Was [A]ppellant deprived of his constitutional right to a fair trial due to ineffectiveness of counsel?

3[.] Was [A]ppellant deprived of his constitutional right to a fair trial due to composition and prejudice of the jury?

4[.] Was it an abuse of discretion by the trial court in sentencing Appellant to a prison term of 262 to 596 months?

---

the judgment of sentence for purposes of appeal. Thus, the appeal is taken from the judgment of sentence, not the order denying post-sentence motions." *Commonwealth v. Chamberlain*, 658 A.2d 395, 397 (Pa. Super. 1995) (footnote omitted). We therefore amend the caption to reflect that the appeal is from the November 30, 2017 judgment of sentence.

[2] We observe that Appellant's statement of the case fails to meet the requirements of Pa.R.A.P. 2117, as he merely lists, without any elaboration, seven procedural events. We admonish him for his noncompliance with our rules.

5[.] Did the trial court err by failing to find for a judgment of acquittal on various counts?

Appellant's Brief at 8.

In Appellant's first issue, he claims that "he was deprived of his right to counsel when the court failed to appoint alternate counsel." *Id.* at 13. We observe that,

> "the right to appointed counsel does not include the right to counsel of the defendant's choice." *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 709 (1998). Moreover,
>
>> [w]hether to grant a defendant's petition to replace court appointed counsel is a decision which is left to the sound discretion of the trial court. As a general rule, however, a defendant must show irreconcilable differences between himself and his court appointed counsel before a trial court will be reversed for abuse of discretion in refusing to appoint new counsel.
>
> *Commonwealth v. Grazier*, 391 Pa.Super. 202, 570 A.2d 1054, 1055 (1990) (citations omitted). *See also* Pa.R.Crim.P. [] 122(C) ("A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons."). In some cases, we have concluded that "substantial reasons" or "irreconcilable differences" warranting appointment of new counsel are not established where the defendant merely alleges a strained relationship with counsel, where there is a difference of opinion in trial strategy, where the defendant lacks confidence in counsel's ability, or where there is brevity of pretrial communications. *Grazier*, 570 A.2d at 1055-56 (collecting cases).

*Commonwealth v. Floyd*, 937 A.2d 494, 497 (Pa. Super. 2007).

To support his argument that the trial court abused its discretion in refusing to appoint alternate counsel, Appellant states:

> On June 12, 2017, the first day scheduled for trial and just before jury selection, [Appellant] informed counsel that he wanted a new attorney. His reasons were that counsel had not adequately prepared for trial, had not sufficiently prepared [Appellant] to go

to trial, and had not subpoenaed all witnesses as requested by [Appellant].

Counsel then made an oral motion seeking to withdraw as counsel and to continue trial until the September term of court. A hearing was held just prior to jury selection[] to review [Appellant's] motion.

[Pennsylvania Rule of Criminal Procedure] 122(c) states that change of appointed counsel shall not be granted except for substantial reasons. [Appellant] explained to the court that counsel had not subpoenaed the witnesses he considered necessary for his case. Counsel told the court that he had endeavored to contact all witnesses, by phone or mail, and that [four] people had gotten back to him and only [two] witnesses were willing to testify and had relevant testimony. These two witnesses appeared and were subsequently called at trial.

[Appellant] further argues that he did not have sufficient time to meet with counsel prior to trial and that he was not aware that trial was to start June 12. [Appellant] himself did not raise these matters [at] the hearing, however[,] [c]ounsel addressed the matters with the court to present [Appellant's] request for counsel to withdraw. The court determined that no substantial reasons were presented, and further determined that the jury would be picked … that afternoon with trial to commence shortly thereafter. Appellant … believes that the trial court abused its discretion when it failed to appoint alternate counsel, and thus deprived [Appellant] of his constitutional right to counsel.

Appellant's Brief at 13-15 (internal citations omitted).

Based on Appellant's argument and our review of the hearing transcript, we discern no abuse of discretion by the trial court in denying Appellant's request. At the hearing, Appellant acknowledged that he "met with [his] attorney a couple different times[,]" and the trial court observed that "we were in court at least … twice last week." N.T. Hearing, 6/12/2017, at 4, 7. The trial court also explained to Appellant that "[t]he affidavit of probable cause is from April of 2016. You certainly were served with the complaint and

certainly have been aware of the Commonwealth's case against you for well over a year." *Id.* at 5-6. The Commonwealth added that the parties were in court the previous week and Appellant was "told that we're going to try this case this week, meaning this week, on Friday." *Id.* at 4. With respect to witnesses, Appellant's counsel explained that he endeavored to make contact with the roughly dozen witnesses Appellant told him about, but "was only able to make contact with four of them." *Id.* at 14. Of those four, Appellant's counsel indicated that only two witnesses had relevant testimony and were willing to participate. *See id.* at 13-14, 18-19. Further, Appellant's counsel explained that he did not subpoena any of the other witnesses because "of the number of them and [he] wasn't certain … what they'd be able to provide." *Id.* at 13. The trial court conducted a lengthy *in camera* discussion with Appellant and his counsel about who these witnesses were and what they would testify to at trial. *Id.* at 10-19. The trial court found that Appellant wanted to call these witnesses to testify about "incidental things[,]" such as Appellant's work schedule. *Id.* at 16-17. The trial court also observed that, months prior, Appellant had been dissatisfied with his previous lawyer and the trial court ultimately appointed present counsel to represent him. *See id.* at 5. The trial court determined that Appellant's "complaints made at the start of trial were not so meritorious to warrant a second substitution and continuance." Trial Court Opinion (TCO), 6/8/2018, at 4 (citations omitted).

Based on the foregoing, Appellant has not convinced us that the trial court abused its discretion, as Appellant does not establish irreconcilable

differences that warranted the appointment of new counsel. Thus, no relief is due on this basis.

Second, Appellant states that he was deprived of his right to a fair trial due to counsel's ineffectiveness. Appellant's Brief at 15. Specifically, Appellant complains that counsel failed to object to the Commonwealth's opening statement, failed to object to leading questions the Commonwealth asked, and failed to adequately cross-examine the victim. *Id.* at 15-16.

Our Supreme Court has stated that, generally, claims of ineffective assistance of counsel should be deferred until collateral review under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. **See Commonwealth v. Holmes**, 79 A.3d 562, 563 (Pa. 2013). However, the Court recognizes two exceptions to this general rule:

> First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims.
>
> Second, with respect to other cases and claims, … where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

*Id.* at 563-64 (footnotes and internal citation omitted).

Here, the trial court ascertained that neither exception applied. ***See*** TCO at 6-10. Appellant does not challenge that determination in his brief; instead, he simply sets forth instances of his counsel's purported ineffectiveness without any supporting authority and little, if any, analysis. Because Appellant advances no reasons for why he satisfied either of the above-stated exceptions, we will not review his ineffective assistance of counsel claims on direct appeal. Accordingly, we dismiss Appellant's ineffectiveness claims without prejudice, in case he decides to pursue these claims in a timely-filed PCRA petition.

Third, Appellant says "he was deprived of his right to a fair trial due to the composition and prejudice of the jury." Appellant's Brief at 16. First, he argues that "[t]he jury was composed primarily of women, nine of twelve, and [Appellant] states this jury was unable to fairly and impartially hear a sexual abuse case." ***Id.*** He insists that his "counsel was at least partly responsible for this jury selection, and that this is further proof of ineffectiveness of counsel depriving him of his right to a fair trial." ***Id.*** at 16-17. Second, he states that "the jury was prejudiced in that one juror knew him and did not reveal this at the time of jury selection. [Appellant] thought the woman looked familiar but could not place her, and it was only after trial had ended that he recollected that he knew her from a neighborhood store…." ***Id.*** at 17. Appellant maintains that "this juror was unable to fairly hear the case, as [Appellant] believes the juror was acquainted with his family and he also believes she was privy to another case in Mercer County that involved

[Appellant, which] was subject to a motion in limine in the present case that prevented the jury from hearing any details about it." *Id.* at 17-18. Finally, Appellant argues that "the jury pool was prejudiced against him as a result of media coverage. [E]ven on the eve of trial[,] there was newspaper and television coverage, and … it was impossible for him to get a fair and impartial jury in Crawford County that did not already have knowledge of the case from the media." *Id.* at 18.

At the outset, we observe that Appellant has waived these arguments. He cites no authority to support them. *See Karn v. Quick & Reilly Inc.,* 912 A.2d 329, 336 (Pa. Super. 2006) ("[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention.") (citation omitted).

Nevertheless, even if not waived, we would conclude that no relief is due. As the trial court aptly explained:

> [Appellant] contends that the jury was not fair and impartial because (a) almost all jurors in this sexual abuse case were female, (b) one of the jurors did not reveal during *voir dire* that he or she knew him, and (c) the jury was tainted by news coverage. [Appellant] did not preserve at trial his objection to the jury's composition; moreover he has no constitutional right to a jury composed of any particular percentage of men. *Cf. J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 … (1994) (peremptory challenges based on sex violate the equal protection rights of prospective jurors). The jury pool was not asked whether anyone knew [Appellant] (although defense counsel could have done so), but were questioned as follows: "do any of you know of any reason why if you were selected as a trial juror in this case, you could not be fair, you could not give [Appellant] and the Commonwealth a fair and impartial trial?" [N.T. Trial, 6/12/2017, at 29-30.] The

lack of response to this question indicates that a juror's ability to be fair and impartial would not be affected by merely knowing [Appellant], and thus there was no need to reveal this alleged acquaintance with him during *voir dire*. The [c]ourt also questioned potential jurors about the taint of news coverage, as follows:

> One of my responsibilities in endeavoring to obtain [a] fair and impartial jury is to make sure that none of you have read or heard anything about this case that would impact upon your ability to serve as a fair and impartial juror. So please keep that in mind as I summarize the counts against [Appellant]…. Now, have you, anyone, read or heard anything at all about these various allegations. If so, please raise your hands.

*Id.* at [10, 12]. No hands were raised. [Appellant], therefore, was not unlawfully prejudiced by drawing a mostly female jury, by a juror possibly knowing him,[12] or by ay news coverage of his case.

> [12] Whether the unidentified juror knew [Appellant] (who recognized him or her) is unknown.

TCO at 4-6 (footnote omitted). We would agree with the trial court that these arguments lack merit. Further, to the extent Appellant claims his counsel was ineffective in light of the jury's composition, we decline to address this issue on direct appeal, for the reasons already discussed *supra.*

In Appellant's fourth issue, he avers that "the trial court abused its discretion in sentencing him to a term of 262 to 596 months[' imprisonment]." Appellant's Brief at 18. Appellant argues that he was forty-three years old at the time of sentencing, and he has "poor health conditions and [a] shortened life expectancy with diagnoses of diabetes, an amputated arm at age ten, a recent diagnosis of the staph infection MERSA and recurrent mental health issues of depression and anxiety." *Id.* at 18-19. He claims that his sentence

"amounts to a life without parole sentence, particularly given that convicted sex offenders are currently not being paroled prior to serving some 85% of their maximum sentence." *Id.* at 19.

Before reaching the merits of this issue, we must determine if Appellant has preserved it for our review. This Court has explained:

> A challenge to the discretionary aspects of sentencing does not entitle an appellant to review as of right. In order to invoke this Court's jurisdiction to address such a challenge, the appellant must satisfy the following four-part test: the appellant must (1) file a timely notice of appeal pursuant to Pa.R.A.P. 902, 903; (2) preserve the issues at sentencing or in a timely post-sentence motion pursuant to Pa.R.Crim.P. 720; (3) ensure that the appellant's brief does not have a fatal defect as set forth in Pa.R.A.P. 2119(f); and (4) set forth a substantial question that the sentence appealed from is not appropriate under the Sentencing Code under 42 Pa.C.S. § 9781(b).

*Commonwealth v. Griffin*, 149 A.3d 349, 353 (Pa. Super. 2016) (internal citations and quotation marks omitted).

While Appellant filed a timely notice of appeal and claimed in a timely post-sentence motion that the trial court failed to account for his poor health in fashioning his sentence, the Commonwealth argues that Appellant waived this claim by "fail[ing] to raise or assert in his brief a Satement [*sic*] of Substantial Question that the sentence imposed is not appropriate under the Sentencing Code." Commonwealth's Brief at 8-9.[3] It is well-established that,

---

[3] We note that the Commonwealth does not cite to Pa.R.A.P. 2119(f) specifically, but instead to Pa.R.A.P. 2116(b), 42 Pa.C.S. § 9781(b), and *Commonwealth v. Coss*, 695 A.2d 831, 833 (Pa. Super. 1997) ("Two requirements must be met before [an] appellant's challenge to the judgment

- 10 -

"[w]hen challenging the discretionary aspects of sentence, 'an appellant must include in his or her brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code.'  If the Commonwealth objects to the appellant's failure to comply with Pa.R.A.P. 2119(f), the sentencing claim is waived for purposes of review."  *Griffin*, 149 A.3d at 353-54 (citations omitted).  As the Commonwealth has objected to Appellant's failure to include in his brief a statement demonstrating a substantial question that his sentence is not appropriate under the Sentencing Code, we deem his claim waived.

Notwithstanding, even if not waived on this basis, we would conclude that Appellant has not raised a substantial question for our review, as this Court has "concluded that an appellant's argument that the trial court failed to give adequate consideration to [his] poor health and advanced age in fashioning his sentence does not raise a substantial question."  *See Commonwealth v. Radecki*, 180 A.3d 441, 469 (Pa. Super. 2018) (internal quotation marks and citations omitted).[4]  Thus, we would determine that

_____

of sentence will be heard on the merits.  First appellant must set forth in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence.  Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under this chapter.") (internal citations and quotation marks omitted).

[4] To the extent Appellant argues that the trial court did not consider that "the parole board does not grant parole until most of a maximum sentence is served in these types of cases[,]" we also would consider this argument

Appellant has failed to raise a substantial question based on his arguments advanced on appeal.

In Appellant's final issue, he challenges whether the trial court erred by failing to find a judgment of acquittal on various counts based on the sufficiency of the evidence. **See** Appellant's Brief at 8, 20. We produce Appellant's entire sufficiency argument *verbatim*:

> The trial court dismissed Appellant White's request for a judgement of acquittal based upon sufficiency of the evidence. White argues that all charges were not proven beyond a reasonable doubt, with testimony that events happened "I believe approximately once a week from April 22 to mid-February when it ended", "that's a little over eight months times four weeks" (Trial Transcript (herein TT) June 13, 2018 p. 40 lines 14-20); and (question) "More than ten times? (answer) Yes" (TT June 13 p. 41) not describing specific commission of a crime sufficiently for a finding of guilt. Pennsylvania courts have held that "the Commonwealth must be afforded broad latitude when attempting to fix the dates of offenses which involve a continuous course of criminal conduct… This is especially true when the case involves sexual offenses against a child victim" (**Commonwealth v. Brooks**, 7 A.3rd 852 (Pa. Super. 2010). White himself testified that no sexual relations had even occurred (Trial Transcript June 14, 2019 p.65; p. 79).

Appellant's Brief at 20-21.

Again, we deem this claim waived for lack of development. **See Karn v. Quick & Reilly Inc.**, **supra.** However, even if not waived, we would reject Appellant's sufficiency challenge to the extent he contests the number of

---

waived. **See** Appellant's Brief at 19. Our review of the record does not indicate that Appellant made this argument below, nor does Appellant point us to where he did so. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Moreover, Appellant cites no authority in his brief to substantiate this argument. **See Karn v. Quick & Reilly Inc.**, **supra.**

convictions he received for certain offenses and the Commonwealth's failure to fix certain dates to these offenses. We note:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Brooks**, 7 A.3d at 856-57 (citation omitted).

> In the case *sub judice*, the trial court explained:

> The evidence was not sufficient, [Appellant] asserts, to support convictions "for most counts of IDSI, [u]nlawful [c]ontact with a [m]inor, [s]tatutory [s]exual [a]ssault, [AIA], and Indecent Assault."[19] He apparently is contesting the number of convictions (five) for each of the following offenses:[20] ISDI, in having the [v]ictim perform fellatio on him (Counts 1-5);[21] [s]tatutory [s]exual [a]ssault, in having vaginal sexual intercourse with the [v]ictim (Counts 13-17); AIA, in putting his fingers in the [v]ictim's genitals (Counts 18-22); [i]ndecent [a]ssault, in touching the [v]ictim's genitals with his penis (Counts 29-33); and in touching the [v]ictim's mouth with his penis (Counts 39 through 43); and [u]nlawful [c]ontact with [m]inor, for the purpose of engaging in IDSI, [s]tatutory [s]exual [a]ssault, AIA, [s]exual [a]ssault, or [i]ndecent [a]ssault (Counts 8-12).

> > [19] [Appellant] does not challenge his solitary sexual assault and corruption of minor convictions.

- 13 -

[20] [Appellant] presumably is not contesting that the Commonwealth failed to establish all of the element[s] of each offense.

[21] Count 6 for ISDI was the only charge for performing cunnilingus on the [v]ictim.

The [v]ictim testified to multiple occurrences of each of these offenses. ISDI and Indecent Assault (oral sex) – twice in the barn, at least five times while driving around, and once in the bedroom. [N.T. Trial, 6/13/2017, at 42-44]. Statutory [s]exual [a]ssault and [i]ndecent [a]ssault (vaginal sex) – approximately thirty-two times at home, and once on the trail behind [Appellant's] place of employment. *Id.* at 40…, 42…, *see also id.* at 35…, 36…. AIA (fingers in genitals) – more than ten times at home. *Id.* at 40…, 41…; *see also id.* at 35…, 38…, 39…, 40…. Unlawful [c]ontact with [m]inor – (all of the above). Testimony as to each separate incident occurring eight years earlier was not required. *See* … *Brooks*, 7 A.3d [at] 858 … (affirming multiple convictions where the victim testified that the appellant had forced her to commit oral sex on him more than ten times, noting that "the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct. … This is especially true when the case involves sexual offenses against a child victim.") (internal citation omitted).

TCO at 13-14. We agree with the trial court's analysis, and would therefore determine the evidence was sufficient to support Appellant's convictions.[5]

Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

_____

[5] Insofar as Appellant maintains that no sexual relations had occurred with the victim, this argument contests the weight of the evidence, not the sufficiency of it. *See Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997) ("[C]redibility determinations are made by the fact finder and … challenges thereto go to the weight, and not the sufficiency, of the evidence."). Appellant has not raised a weight claim in his statement of the questions involved, so we decline to consider it. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/30/2019